# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs April 21, 2010

## SAMUEL L. GIDDENS, JR. v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2002-B-1184     J. Randall Wyatt, Jr., Judge**

_____

**No. M2009-00699-CCA-R3-PC - Filed July 14, 2010**

_____

A Davidson County jury convicted the Petitioner, Samuel L. Giddens, Jr., of reckless homicide, attempted especially aggravated robbery, and aggravated burglary, and the trial court sentenced him to an effective sentence of fourteen years. On direct appeal, this Court affirmed the Petitioner's convictions and sentence. *State v. Samuel L. Giddens, Jr.*, No. M2005-00691-CCA-R3-CD, 2006 WL618312, at *1 (Tenn. Crim. App., at Nashville, Mar. 13, 2006), *Tenn. R. App. P. 11 application denied* (Tenn. June 26, 2006). The Petitioner filed a petition for post-conviction relief, later amended by appointed counsel, alleging, in pertinent part, that he received the ineffective assistance of counsel. After a hearing, the post-conviction court dismissed the petition. After a thorough review of the record and applicable authorities, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, delivered the opinion of the Court, in which DAVID H. WELLES and THOMAS T. WOODALL, JJ., joined.

Dumaka Shabazz, Nashville, Tennessee, for the Appellant, Samuel L. Giddens, Jr..

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Clark B. Thornton, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Amy Eisenbeck, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

In our opinion on the Petitioner's direct appeal, we recited in detail the underlying

facts supporting his conviction. Due to the length of those facts, however, we will provide a brief summary of the facts supporting the Petitioner's convictions. Police responded to a call at an apartment, where they found Kevin Johnson holding a bloody cloth against his stomach. Johnson told officers that he and others had been shot. Officers found in the apartment another man who had been shot in the back, and a third man, Larry Gamble, who was dead, lying on top of the Petitioner, who was still alive.

Johnson testified that he was at the apartment with Charles Duane Thomas, Gamble, his mother, and his two nieces, when he heard a knock at his door. Johnson answered and saw John W. Brewer, III, the Petitioner's co-defendant, at the door. Brewer asked Johnson for cocaine, and Johnson responded that he did not have any. Johnson admitted that he had previously sold drugs from his apartment. Johnson said he saw the Petitioner standing in the driveway, and he asked Brewer who was in the driveway. At this point, Brewer pulled out a gun, pointed it at Johnson, and said "get down, . . . you know what this is." Johnson complied, and the Petitioner came onto the porch displaying a gun. Brewer demanded money, and Johnson gave him the contents of his pockets. Johnson said he informed Brewer and the Petitioner that the apartment contained multiple people, Brewer told him to be quiet or Brewer would kill everyone. Brewer then put his gun to Johnson's side, the Petitioner put his gun to the back of Johnson's head, and the three men entered the apartment.

Inside, Brewer asked Johnson for money, pushed him to the floor, and told everyone not to move or he would shoot. Brewer told Johnson to search Thomas, during which time Brewer pointed the gun alternatively at Gamble and Johnson. Gamble jumped across the table in an attempt to take the Petitioner's gun, and Brewer started shooting. Johnson tried to grab Brewer, and Brewer shot him. Johnson fell back and heard three more gun shots. He assumed Brewer was out of bullets when the shooting stopped, so he tried to grab Brewer, who ran out of the back door. Johnson called 911 and then collapsed.

Thomas, who was sleeping when Brewer and the Petitioner came into the apartment, was awakened when the Petitioner told Thomas to get on the ground. Thomas complied and heard two mens' voices and felt someone pat him down and take his wallet. Thomas saw Gamble jump up and grab the Petitioner. When the two men finished wrestling, Thomas saw the Petitioner's face and saw a gun on the floor by the Petitioner and Gamble.

When police arrived, they found the Petitioner shot and lying underneath Gamble. The Petitioner was transported to the hospital, where nurses found some crack cocaine and marijuana in his pockets. The Petitioner told police that he went to Johnson's residence to purchase drugs. While waiting in the driveway, a masked man took them inside the residence at gun point and demanded money. The Petitioner said he heard gun shots and took out a .357 magnum gun but did not recall whether he fired his weapon. Thomas was also

transported to the hospital, and, after he was released, he identified the Petitioner from a photographic line-up.

The medical examiner retrieved .22 caliber bullets from Gamble's body, and the bullet removed from the Petitioner was a .38, .357 magnum class. The medical examiner said that both of Gamble's wounds were created by a gun fired from more than two feet away. Gamble had smoked marijuana within several hours of his death. Police did not recover the guns used to shoot Gamble or the Petitioner. The gun they retrieved from the scene did not fire any of these bullets.

Police found near the apartment a car that looked "suspicious" because no witnesses knew to whom the car belonged and because there was mud smeared all over the license plate. Police used the Vehicle Identification Number to determine the car belonged to the Petitioner. Both Brewer's and the Petitioner's fingerprints were found on the trunk of the car.

Based upon this evidence, the jury convicted the Defendant of the reckless homicide of Larry Gamble, the attempted especially aggravated robbery of Charles Thomas, and the aggravated burglary of the habitation of Kevin Johnson. The trial court sentenced the Defendant to fourteen years in the Tennessee Department of Correction.

## B. Post-Conviction Hearing

The Petitioner filed a petition for post-conviction relief, which he later amended, alleging that he received the ineffective assistance of counsel. The Petitioner alleged he received the ineffective assistance of counsel because: (1) his trial counsel did not hire a private investigator; (2) his trial counsel allowed highly prejudicial hearsay evidence to be introduced into evidence; (3) his trial counsel had a "questionable attitude" toward the preparation of his defense; and (4) his trial counsel failed to ask the trial court to "waive all the applicable lesser included offenses [of theft] from being presented to the jury."

At the hearing on his petition, the following evidence was presented: The Petitioner's trial counsel ("Counsel") testified that the Petitioner was charged with first degree murder, felony murder, two counts of especially aggravated robbery, two counts of attempted first degree murder, attempted especially aggravated robbery, and aggravated burglary. The trial court granted the Petitioner's motion for judgment of acquittal as to first degree murder and both counts of attempted first degree murder. The trial court found that the evidence was insufficient to support the charged offenses of especially aggravated robbery, but it allowed the jury to decide whether the Defendant had committed the lesser offenses of attempted especially aggravated robbery, attempted robbery, and attempted theft. The jury found the

Petitioner not guilty of felony murder but found him guilty of the lesser included offense of reckless homicide. The jury also found the Petitioner not guilty of one count of attempted especially aggravated robbery, but it found him guilty of the other count of attempted especially aggravated robbery. The jury was hung on the other count of attempted especially aggravated robbery, and it found the Petitioner guilty of aggravated burglary. Counsel agreed the trial court sentenced the Petitioner to a total of fourteen years.

Counsel testified he did not hire a private investigator to assist in his investigation of this case. He said the Defendant's family hired Charles Scott, a private investigator to investigate this case, and the Petitioner's co-defendant's attorney hired Bobby Brown to investigate this case. Counsel said he consulted with Charles Scott about the case on multiple occasions but said that there was not a lot of investigation needed in this case because the Petitioner was found at the crime scene shot and lying on the ground underneath the deceased victim.

Counsel said he thought he had visited the Petitioner, who was in custody, less than ten times at the Petitioner's prison facility. He said, "there's only so much talking you can do with one person." Counsel did not recall what pretrial motions he had filed, but he knew that the Petitioner's case had been severed from the Petitioner's co-defendant's case.

Counsel recalled Detective Williams testifying at trial that a witness had given him a statement that detailed everything that had happened in the house, which Detective Williams said he found odd because it sounded like the witness had been in the house at the time of the shootings. Detective Williams testified that the witness told him that she was not in the house when it happened but that the events that she described were told to her. Counsel said he did not object to this testimony on hearsay grounds and that he still did not see the hearsay contained in that testimony because Detective Williams did not relate what the witness told him and the testimony of Detective Williams was not offered "for the truth of the matter asserted therein."

Counsel agreed that the Petitioner never left the crime scene and, therefore, the State could not prove that anything had been taken from the house. He said, however, that his primary focus was defending the first degree murder charge, which would have subjected the Petitioner to a sentence of fifty-one years. The robbery, he said, was "the least of [his] worries," considering the gravity of the other charges the Petitioner faced.

Counsel said he argued that the Petitioner should be granted a judgment of acquittal as to the robbery charges. He did not argue, however, that there should be no lesser included offenses of these charges submitted to the jury.

On cross-examination, Counsel testified he felt well-prepared on the day of trial, and he considered the conviction for reckless homicide a victory. He said, during plea negotiations, he had tried to convince the Petitioner to plead guilty to voluntary manslaughter, and he was convicted of a lesser crime than that by being convicted of reckless homicide.

Based upon this evidence, the post-conviction court dismissed the Petitioner's petition. It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends his trial counsel was ineffective because: (1) his trial counsel did not hire a private investigator; (2) his trial counsel allowed highly prejudicial hearsay evidence to be introduced into evidence; (3) his trial counsel had a "questionable attitude" toward the preparation of his defense; and (4) his trial counsel failed to ask the trial court to "waive all the applicable lesser included offenses from being presented to the jury."

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. *Id*. at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not

functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n. 38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. *House*, 44 S.W.3d at 515 (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. *House*, 44 S.W.3d at 515.

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

## A. Private Investigator

The Petitioner first contends that Counsel was ineffective for failing to hire a private investigator. The post-conviction court found:

> The Court finds that [Counsel] did not employ an investigator in the Petitioner's case, but that two investigators were researching the circumstances behind the crime – including an investigator for the Petitioner's family and one for the co-defendant. The Court finds that [Counsel] was in regular contact with Mr. Scott and that any investigative information would have been used by [Counsel] in the defense of the Petitioner. The Court therefore finds that [Counsel's] conduct in failing to hire an investigator did not prejudice the Petitioner's case.

We agree with the post-conviction court. Counsel testified at the post-conviction hearing that he consulted with Scott, the private investigator hired by the Petitioner's family, on several occasions. He said, however, this was not a case in which a lot of investigation was necessary. The Petitioner has failed to show that Counsel was deficient in this regard. He has also failed to show how he was prejudiced by any lack of investigation. The Petitioner is not entitled to relief on this issue.

## B. Detective Williams's Testimony

The Petitioner next contends that Counsel was ineffective for allowing "highly prejudicial hearsay evidence to be introduced into evidence via the 'back door' during the trial." The Petitioner points to Detective Williams's trial testimony that a witness had given him a statement that detailed everything that had happened in the house, which Detective Williams said he found odd because it sounded like the witness had been in the house at the time of the shootings. The witness told Detective Williams, however, that she was not in the house when it happened but that she was relaying to him the events that had been described to her. This testimony, the Petitioner asserts, tended to "impermissibly corroborate other witnesses' stories." The post-conviction court found:

[Counsel] believed that the statements by Ms. Cole to Detective Williams were introduced in a manner so as to attempt to show the mental state of the detective and not to demonstrate the truth of Ms. Cole's statements, and that this belief was the basis for [Counsel's] failure to object to this statement as hearsay. The Court finds that [Counsel's] failure to object to this statement was reasonable and within the range of competence of an attorney in a criminal case. The Court therefore finds that this issue is without merit.

We conclude the evidence does not preponderate against the post-conviction court's findings. As Counsel noted during the post-conviction hearing, Detective Williams's testimony did not reveal what details Ms. Cole recounted about the events surrounding the shooting, and it is unclear if her story comported entirely with the stories of the other witnesses to the shooting. Further, this testimony does not appear to be offered for the truth of the matter asserted, that Ms. Cole's story to the detective was the same as the other witnesses, but rather to provide factual background and the framework of the detective's investigation. Counsel was not deficient in this regard. The Petitioner is not entitled to relief on this issue.

### C. Counsel's Attitude

The Petitioner next contends that Counsel had a "questionable attitude toward preparation during the pretrial period" and, despite the Petitioner's best efforts, Counsel failed to work on a defense strategy with him. Specifically, the Petitioner notes that Counsel testified that he visited the Petitioner in prison, "probably less than ten times" and then said, "there's only so much talking you can do with one person." The post-conviction court found, "[Counsel's] schedule of prison visitation was not unreasonable conduct for an attorney in a criminal case." Further, the court found that the Petitioner had not "alleged specific facts to demonstrate a failure of pretrial communication between [Counsel] and the Petitioner."

The evidence does not preponderate against the post-conviction court's findings. Counsel testified he felt well-prepared for the Petitioner's trial. Counsel successfully defended the Petitioner against many of the charges he faced, including the most serious charges of first degree premeditated murder and first degree felony murder. We conclude Counsel's performance was not deficient and the Petitioner has failed to prove prejudice. The Petitioner is not entitled to relief on this issue.

### D. Lesser Included Offenses

The Petitioner finally contends his trial counsel was ineffective for failing to ask the trial court to "waive all the applicable lesser included offenses from being presented to the jury." The post-conviction court found:

[Counsel] did not attempt to waive any lesser included offenses, but that [Counsel] did obtain a voluntary dismissal of one charge upon agreement with the State. The Court finds that the decision to include lesser offenses from the charged offense was made by the Court and that the statutory law permits the Court to charge any lesser included offenses where the evidence is legally sufficient to support a conviction for that offense. Tenn. Code Ann. § 40-18-110. The Court finds that the inclusion of lesser included offenses acted as a benefit to the Petitioner. Specifically, in this case the Petitioner was convicted of a lesser included homicide offense than for what he was originally charged. The Court finds that the Petitioner has failed to demonstrate any prejudice resulting from [Counsel's] failure to attempt to waive any lesser included offenses.

The Petitioner's argument in his brief is not entirely clear, and he cites no case law to support this argument. Further, we conclude that the evidence does not preponderate against the post-conviction court's findings. As the State points out in it's brief, this Court on direct appeal stated the following in our factual summary of this case:

At the conclusion of the State's proof, the Defendant moved for a judgment of acquittal as to the charges of especially aggravated robbery because the State failed to produce any evidence at trial that a theft had occurred. The trial court granted the Motion for Judgment of Acquittal on the indicted offenses, but it allowed the jury to consider the lesser-included offenses of attempted especially aggravated robbery. The Defendant objected to the trial court's decision.

It appears that Counsel did, therefore, unsuccessfully object to the submission of the lesser included offenses of especially aggravated robbery being submitted to the jury. Further, the post-conviction court correctly noted that it is the trial court's duty to charge all lesser included offenses supported by the evidence. Counsel was not deficient in this regard. The Petitioner is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and the applicable authorities, we affirm the post-conviction court's dismissal of the Petitioner's petition for post-conviction relief.

_____
ROBERT W. WEDEMEYER, JUDGE

-9-